STATE OF NEBRASKA v. JOHN E. HILL, EX-TREASURER,

AND

STATE OF NEBRASKA v. THOMAS H. BENTON, EX-AUDITOR OF PUBLIC ACCOUNTS.

FILED JUNE 5, 1893.  NOS. 6093, 6094.

1. Impeachment: EX-OFFICERS OF STATE. The power of impeachment conferred by the constitution upon the legislature extends only to civil officers of the state, and this power cannot be exercised after the person has gone out of office.

2. Private citizens are not amenable to impeachment.

3. The legislature has no authority to prefer articles of impeachment against ex-officials.

IMPEACHMENT PROCEEDINGS before the supreme court commenced under the provisions of section 14, article 3, of the constitution. *Dismissed.*

*P. H. Barry, C. D. Casper,* and *George R. Colton,* managers.

*George W. Doane, S. B. Pound, W. L. Greene,* and *G. M. Lambertson,* for the state.

*J. H. Broady,* for defendant Hill.

*R. D. Stearns* and *John H. Ames,* for defendant Benton.

NORVAL, J.

The above entitled cases present for decision the same question, and, for sake of brevity, will be considered and disposed of together.

The legislature, on the 7th day of April, 1893, adopted articles of impeachment against the respondent Thomas H. Benton, late auditor of public accounts, charging him with having committed certain official misdemeanors while he was discharging the duties of the office aforesaid. On the 6th day of April, 1893, articles of impeachment against the respondent John E. Hill, ex-state treasurer, for misdemeanors in office, alleged to have been committed by him during the time he was treasurer of the state, were adopted by the legislature. The articles of impeachment against each of the respondents were presented to and filed in this court on the 10th day of April, 1893. Subsequently a plea to the jurisdiction was filed by each respondent, the two being substantially alike, which alleges, in effect, that this court should not take further cognizance of the said articles of impeachment exhibited and presented against him, because the respondent, at the time of the adoption of the same, and when the first resolution of impeachment against him was presented to the house of representatives, and at the time of the investigation which led up to said impeachment, as well as at all times since, and for a long time before the first action in relation to said impeachment

was taken and had, was not an officer of this state, but that he then was and ever since has been, and now is, a private citizen of the United States and of this state; that the office to which he had been elected, and which he had filled, expired on the first Thursday after the first Tuesday in January, 1893, and that at the general election in 1892 his successor was duly elected, who qualified, was inaugurated and installed into the office as the successor of the respondent, on the 14th day of January, 1893, and that not until long after the date last aforesaid was the investigation commenced which resulted in said impeachment.

The question presented for our investigation is this: Should the pleas to the jurisdiction be sustained? The proposition stated in a different form is: Has the legislature the power to prefer articles of impeachment against a person after his term of office has expired, he at the time of such impeachment being a private citizen and not an officer of the state? The question is now for the first time submitted to this court for its consideration and judgment.

An examination of the provisions of the constitution of Nebraska on the subject of impeachment is necessary in order to arrive at a correct decision.

By section 14, article 3, of the constitution the exclusive power of impeachment is conferred upon the two houses of the legislature, when in joint convention. The section also declares that "A notice of an impeachment of any officer, other than a justice of the supreme court, shall be forthwith served upon the chief justice by the secretary of the senate, who shall thereupon call a session of the supreme court to meet at the capital within ten days after such notice to try the impeachment. A notice of an impeachment of a justice of the supreme court shall be served by the secretary of the senate upon the judge of the judicial district within which the capital is located, and he thereupon shall notify all the judges of the district court in the state to meet with him within thirty days at the

capital, to sit as a court to try such impeachment, which court shall organize by electing one of its number to preside. No person shall be convicted without the concurrence of two-thirds of the members of the court of impeachment, but judgment in cases of impeachment shall not extend further than removal from office and disqualification to hold and enjoy any office of honor, profit, or trust in this state, but the party impeached, whether convicted or acquitted, shall nevertheless be liable to prosecution and punishment according to law. No officer shall exercise his official duties after he shall have been impeached and notified thereof until he shall have been acquitted."

Section 5, article 5, provides that "All civil officers of this state shall be liable to impeachment for any misdemeanor in office."

Section 3, article 14, reads as follows: "Drunkenness shall be cause of impeachment and removal from office."

The foregoing sections contain every provision to be found in the constitution relating to impeachment. That instrument designates the persons who may be impeached, namely, "All civil officers of this state." It likewise specifies the grounds for impeachment. The constitution does not in express terms say that a private citizen can be impeached, nor does it contain words from which such an inference can be drawn. On the other hand, it is plain that the legislature has no power to impeach a person who has never held any public office in this state. It is civil officers who are amenable to impeachment. Section 5, article 5, so declares. None others were intended to be included by the framers of the constitution. This is clearly manifest from the language of the instrument.

Section 5, article 5, makes any misdemeanor in office an impeachable offense, and section 3, article 14, declares that drunkenness shall be cause for removal from office. These are the only grounds for impeachment enumerated in the constitution. Thus it will be seen that acts committed by a

State v. Hill.

person while in office are alone impeachable. The provisions of section 14, already quoted, are not only in harmony with this construction, but they give strength to it. That section specifies the tribunals which shall try impeachments and the person upon whom notice of the proceedings shall be served. It requires that "notice of an impeachment of any *officer*, other than a justice of the supreme court, shall be forthwith served upon the chief justice by the secretary of the senate, who shall thereupon call a session of the supreme court to meet at the capital within ten days after such notice to try the impeachment." It is further provided that in case of the impeachment of a justice of the supreme court notice thereof must be served upon a judge of the district court of the county in which the capital is located, and such impeachment is to be tried before all of the judges of the district courts in the state. While the constitution makes ample provision for the trial of articles of impeachment exhibited by the legislature against officers, it neither designates the tribunal which shall try impeachment proceedings against a private citizen, nor does it specify the person to whom notice in such a case shall be given. No power is conferred· by the constitution upon this court, nor upon any other tribunal, either in direct terms or by implication, to try an impeachment proceeding against a person who has never held an office. In Great Britain all subjects of the realm, whether in or out of office, are impeachable; but such rule does not prevail in this country. Here none but public officers are subject to impeachment. (Story, Constitution, sec. 790; 9 Am. & Eng. Ency. Law, 953.)

Judge Story in his valuable commentaries on the federal· constitution, after quoting section 4, article 2, of that instrument, which reads, " The president, vice president, and all civil officers of the United States shall be removed from office on impeachment for, and conviction of, treason, bribery or other high crimes and misdemeanors," says : " From

State v. Hill.

this clause it appears that the remedy by impeachment is strictly confined to civil officers of the United States, including the president and vice president. In this respect it differs materially from the law and practice of Great Britain. In that kingdom all the king's subjects, whether peers or commoners, are impeachable in parliament; though it is asserted that the commoners cannot now be impeached for capital offenses, but for misdemeanors only. Such kind of misdeeds, however, as peculiarly injure the commonwealth by the abuse of high offices of trust are the most proper, and have been the most usual grounds for this kind of prosecution in parliament. There seems a peculiar propriety, in a republican government, at least, in confining the impeaching power to persons holding office. In such a government all the citizens are equal, and ought to have the same security of a trial by a jury for all crimes and offenses laid to their charge, when not holding any official character. To subject them to impeachment would not only be extremely oppressive and expensive, but would endanger their lives and liberties by exposing them against their wills to persecution for their conduct in exercising their political rights and privileges. Dear as the trial by jury justly is in civil cases, its value as a protection against the resentment and violence of rulers and factions in criminal prosecutions makes it inestimable. It is there, and there only, that a citizen, in the sympathy, the impartiality, the intelligence, and incorruptible integrity of his fellows, impaneled to try the accusation, may indulge a well founded confidence to sustain and cheer him. If he should choose to accept office, he would voluntarily incur all the additional responsibility growing out of it. If impeached for his conduct while in office, he could not justly complain, since he was placed in that predicament by his own choice; and in accepting office he submitted to all the consequences. Indeed, the moment it was decided that the judgment upon impeachments should be limited to removal and disqualifi-

cation from office, it followed, as a natural result, that it ought not to reach any but officers of the United States. It seems to have been the original object of the friends of the national government to confine it to these limits; for in the original resolutions proposed to the convention, and in all the subsequent proceedings, the power was expressly limited to national officers."

The foregoing quotation is now generally accepted as a correct exposition of the law. We see no escape from the conclusion in this state, under the provisions of our constitution, that the power of impeachment extends exclusively to public officials. Where there has been no official guilt, the remedy by impeachment will not lie.

It is urged by counsel for the managers that ex-officers are liable to impeachment for official misdemeanors committed while in office; that jurisdiction attaches immediately upon the commission of an impeachable offense, and that the expiration of the official term does not deprive the legislature of the power to impeach, or the court to try.

It cannot be said that there is any provision of the constitution which expressly confers the authority to impeach a person after he is out of office, while section 5, already quoted, designates the persons who may be impeached as "all civil officers of this state." This language is unambiguous. It means existing officers; persons in office at the time they are impeached. Ex-officials are not civil officers within the meaning of the constitution. Jurisdiction to impeach attaches at the time the offense is committed and continues during the time the offender remains in office, but not longer.

The necessary implication of the provisions in section 14, article 3, of the constitution, that "judgment in cases of impeachment shall not extend further than removal from office and disqualification to hold and enjoy any office of honor, profit, or trust in this state," is that the offending party must be in office at the time the impeachment pro-

ceedings are commenced. In case of impeachment, either
one of two judgments can be pronounced, namely, removal
from office, or removal and disqualification to hold office.
It is obvious that there can be no judgment of removal
where the party was not an officer when impeached. It is
claimed by counsel for the managers, as we understand
their argument, that a judgment of disqualification can be
entered without a judgment of removal. All will concede
that disqualification to hold office is a punishment much
greater than removal; so that if the construction contended
for by counsel is the true one, then in case the person im-
peached is out of office, he is liable to a more severe pen-
alty than might have been inflicted upon him had he been
impeached before he went out of office. We cannot be-
lieve that the members of the convention who framed the
constitution so intended.

Judge Story in discussing the question whether a person
can be impeached after he has ceased to hold office, at sec-
tion 803, says: "As it is declared in one clause of the con-
stitution that 'judgment in cases of impeachment shall not
extend further than a removal from office and disqualifica-
tion to hold any office of honor, trust, or profit under the
United States,' and in another clause, that the 'president,
vice president, and all civil officers of the United States
shall be removed from office on impeachment for, and con-
viction of, treason, bribery, or other high crimes or misde-
meanors,' it would seem to follow that the senate, on the
conviction, were bound in all cases to enter a judgment of
removal from office, though it has a discretion as to inflict-
ing the punishment of disqualification. If, then, there
must be a judgment of removal from office, it would seem
to follow that the constitution contemplated that the party
was still in office at the time of impeachment. If he was
not, his offense was still liable to be tried and punished in
the ordinary tribunals of justice. And it might be argued
with some force that it would be a vain exercise of author-

ity to try a delinquent for an impeachable offense when the most important object for which the remedy was given was no longer necessary or attainable. And although a judgment of disqualification might still be pronounced, the language of the constitution may create some doubt whether it can be pronounced without being coupled with a removal from office."

A number of decisions by courts of impeachment, both in England and in this country, have been cited by counsel for the managers to sustain the proposition that a person whose term of office has expired and who is no longer in office, is subject to impeachment. Two English cases have been mentioned, those of *Warren Hastings* and *Lord Melville.* While it is true that each was impeached long after he had ceased to hold the office which he occupied at the time of the commission of the offense charged, yet no plea to the jurisdiction was or could be raised, for the obvious reason that parliament is omnipotent. As all persons in England, those in as well as those out of office, are subject to impeachment, the cases of *Hastings* and *Melville* are not in point.

The next case is that of *William Blount,* who was a United States senator from Tennessee. He was expelled by the senate for official misdemeanor, and was subsequently impeached by the house of representatives for the same act. He pleaded that a senator is not a civil officer within the meaning of the constitution, and also that he was not a senator when the articles of impeachment were adopted. His plea was sustained upon the first ground alone, and therefore the ruling in that case is not an authority either way on the question before us.

*Judge Barnard* was impeached in the state of New York during his second term, for acts committed in his previous term of office. His plea that he was not liable to impeachment for offenses occurring in the first term was overruled. Precisely the same question was raised in the impeachment

proceedings against *Judge Hubbell*, of Wisconsin, and on the trial of *Governor Butler*, of this state, and in each of which the ruling was the same as in the *Barnard Case*. There was good reason for overruling the plea to the jurisdiction in the three cases just mentioned. Each respondent was a civil officer at the time he was impeached, and had been such uninterruptedly since the alleged misdemeanors in office were committed. The fact that the offense occurred in the previous term was immaterial. The object of impeachment is to remove a corrupt or unworthy officer. If his term has expired and he is no longer in office, that object is attained, and the reason for his impeachment no longer exists. But if the offender is still an officer, he is amenable to impeachment, although the acts charged were committed in his previous term of the same office.

'The only other decision to which we have been referred is the *Belknap Case*. The house of representatives impeached William W. Belknap for acts committed while secretary of war. On the day the articles of impeachment were adopted, but prior to their adoption, Mr. Belknap resigned, and his resignation was accepted by the president. Before the trial the respondent interposed a plea to the jurisdiction, on the ground that he had ceased to be an officer before he was impeached. The question was ably argued and the senate of the United States, sitting as a court of impeachment, overruled the plea by a vote of 37 to 29. At the close of the trial Mr. Belknap was acquitted. The senators who voted against conviction, the record shows, did so upon the express ground that the house of representatives had no jurisdiction to impeach him and the senate was without jurisdiction to try him, inasmuch as he had ceased to be a civil officer. So instead of the *Belknap Case* being an authority in favor of jurisdiction in the case at bar, it should be regarded an adjudication against the proposition.

The reason jurisdiction should not be entertained in the cases against Benton and Hill is much stronger than in the *Belknap Case.* There the respondent resigns his office on the very day he was impeached for the sole purpose of escaping impeachment. In objecting to the jurisdiction, he took advantage of his own acts. Here Benton and Hill cease to be officers by reason of the expiration of their official term. They did nothing to defeat jurisdiction.

But independent of authorities or precedents, if we do not misconceive the meaning of the constitution, there is no room for doubt that ex-officials are not impeachable, since civil officers alone are enumerated in that instrument as subject to that remedy. The term officer cannot properly be applied to a person who is not at the time in the holding of an office. When a person ceases to hold an office, he immediately becomes a private citizen.

Reference has been made to certain sections of the Criminal Code which provide for the punishment of sheriffs and other officers for official misconduct, and the question is asked whether the offending officer must be punished while he is in office or not at all? We answer, no. But the same rule does not apply to impeachments, for the reason, stated by another, "the two remedies have totally distinct aims. One remedy is given against a crime, and the other against a position; one is for the punishment of an offender, the other for the purification of the public service; one is meant to reform a criminal, the other is meant to reform an office." Again, the penalty provided in the sections alluded to is entirely different from that in cases of impeachment. In the former, the sentence may be either fine or imprisonment or both, while in the latter the judgment in case of conviction shall not extend further than removal from office and disqualification to hold office. Further, the statute fixes the period in which prosecutions shall be commenced for violations of the criminal laws of the state; therefore, any criminal prosecution can be brought

within that time, even though the accused occupied an official station when the offense was committed, but is no longer in office.

At the argument our attention was called by counsel for the managers to sections 8 and 9 of chapter 19 of the Compiled Statutes of 1891, which read as follows:

"Sec. 8. An impeachment of any state officer shall be tried, notwithstanding such officer may have resigned his office, or his term of office has expired; and if the accused person be found guilty, judgment of removal from office, or disqualifying such officer from holding or enjoying any office of honor, profit, or trust in the state, or both, may be rendered as in other cases.

"Sec. 9. An impeachment against any state officer shall be tried and judgment of removal from office, or of disqualification to hold office, may be rendered, notwithstanding the offense for which said officer is tried occurred during a term of office immediately preceding."

The contention of counsel is that the foregoing provisions not only grant the power to try, but to prefer charges of impeachment against a person who has held office, after the expiration of his term. We are not aware of any rule governing the construction of statutes which would justify such an interpretation. The sections quoted have reference to the trial of an impeachment and the Code defines a trial to be "a judicial examination of the issues, whether of law or of fact, in an action." (Code, sec. 279.) The trial of a criminal case does not include the returning of an indictment by the grand jury or the filing of an information by the county attorney. The trial of a civil suit does not embrace the filing of a petition and other pleadings or the issuance of a summons; so when the statute declares that "an impeachment of any state officer shall be tried," it means what it says and nothing else. The meaning of section 8 is that where a state officer has been impeached during his term he shall be tried and, if found guilty, judg-

ment, shall be rendered, even though he may have resigned
or his term of office has expired after the articles of im-
peachment were exhibited against him.   To hold that it
confers power upon the legislature to prefer charges after
the resignation of the officer, or the expiration of his term,
would be a strained and unnatural construction of the lan-
guage employed.   The statute does not say that a person
may be impeached after he has resigned, or his term has
expired, nor does it contain words which can reasonably
be said to warrant such an interpretation.   Section 9 pro-
vides for the trial of an impeachment of a state officer for
an offense occurring during his term of office immediately
preceding.   It contemplates that the impeachment proceed-
ings shall be commenced while the offender is yet in office.
. The respondents being out of office at the time the pro-
ceedings for their impeachment were instituted, the legisla-
ture had no power to impeach them, and this court has no
jurisdiction to try them.   The proceedings are therefore

DISMISSED.

THE other judges concur.